Price, C. J.
The now deceased Samuel Hartrauft, for the year 1898, entered into a written contract of agency with the plaintiff, the Deering Harvester Company, whereby he was employed and authorized to sell for the company in the vicinity of Findlay, binders, reapers, mowers, hay-rakes and other agriclutural implements, for which sales he was to receive a stipulated commission. The contract strictly provides that the title to all such articles should remain in the company until sold and settled for by cash or notes of the purchasers, and that the proceeds of sales, whether notes or cash, should be the property of the company.
To further restrict the agent, Hartrauft, the following ■stipulation is found in the contract: “To hold all goods shipped or received, until sold and delivered, and the entire proceeds of all sales as the sole property of said Deering Harvester Company, and as a special deposit for it, until it shall be fully settled for.”
*312 The deceased operated under this contract, which contained many other provisions not important here — during the year 1898, until late in the fall season of that year. In addition to his business as agent for this company, he was the owner of a hard-ware store and other supplies suitable for a trade with the farmers in the neighborhood, and was engaged in operating Baid store while making sales for the company on commission.
On the 10th day of November, 1898, Hartrauft and the company, through its traveling agent, Robinson, came to a settlement of his dealings on commission sales, and a settlement sheet was prepared stating all sales, to whom and the amount for which they were made, and the amount received by the amount in cash and in notes, which sheet also showed his credits, and when the account was balanced, there was. the sum of $4158.85 due from Hartrauft to the company. He then signed the settlement sheet wherein he acknowledged that sum in his hands as “representing the unaccounted for net proceeds of sales of personal property belonging to the company”, and above his signature are' these words: agree to deliver said sum to said company without discount, off-set or counter claim.”
After signing the above settlement sheet, Hartrauft. turned over to the company, for credit, notes arising from commission sales to the amount of $2171,50, and after other proper credits had been made, there was due a balance of $899.94, which has never been paid or accounted for, This agent was not prepared to deliver or pay to the company the ascertained balance, and being asked by Robinson, agent for the plaintiff, why he could not do so, Hartrauft, stated that he had used the money in his store business, buying goods, paying its bills, and expenses of its operation. This is uncontradicted, and is the only account or explanation made as to his use and disposition of the money.
Hartrauft died intestate and insolvent on the 2d day of' January, 1899, without having paid any further amount on this claim, and defendant became the administrator of his estate which consists of about $40 in money and a stock of' merchandise referred to, which brought at administrator’s, sale $6576,56. The administrator also realized from sale-of real estate $2887.90,and from notes and accounts due for merchandise sold $1015.98.
*313 The plaintiff presented its claim for $899.94, duly verified,, to the administrator of Hartrauft’s estate for allowance as a preferred claim against the proceeds of sale of stock in the store on the ground that the trust fund in hands of deceased to that amount had been used in the store business and that the stock, and afterwards its proceeds became impressed with a trust relation. The administrator denied the right to preference, and this action was brought in the lower court to have the trust declared and for sn order that defendant allow and pay said claim as preferred out of'' proceeds of sale of the stock of goods; and the petition states the facts substantially as we have found them, and the case is before us on appeal from the decree of that court.
Two points are relied upon by the defendant to defeat the right of plaintiff to relief prayed for.
Fir t: That the probate court had exclusive jurisdiction-to hear and determine the question as to preference, and that the court of common pleas was without jurisdiction to-entertain plaintiff’t suit, and if so, this court has no jurisdiction on the appeal.
We are aware that our statutes confer very great authority on probate courts in the settlement of estates of deceased' persons, and that such authority has been broadened by legislative enactment at almost every session of our general’ assembly. But those courts have no equity jurisdiction except where it is clearly conferred by statute, and we are not able to find on our examination of the statutes, that probate courts have been given exclusive jurisdiction over such questions as are raised in this case. The least that can be said for the powers of those courts in this respect, is, that they are concurrent-with the powers of the court of' common pleas, and the remedy in one, cumulative with a right to the remedy in the other, If the legislature has so enlarged the jurisdiction of the probate court, that it may entertain and determine such questions, it has not taken it away from the court of common pleas which has general' equity jurisdiction. So we decide the question of jurisdiction in favor of the plaintiff. See Jones et al. v. Kilbreth, 49 Ohio St., 401.
Second: The defendant claims that the facts do not establish a trust relation between the amount due plaintiff' *314 and the stock of merchandise, so as to justify the court in charging the proceeds of the sale of goods with said sum as a preferred or equitable lien; and further, that plaintiff in its pursuit of its money, is confined to the amount of cash in possession of the agent at his decease.
The purpose of the parties to the contract of agency referred to, is quite apparent; especially that clause which has been quoted, to-wit: “To hold all goods shipped or received, until sold and delivered, and the entire proceeds of all sales as the sole property of said Deering Harvester Company, and as a special deposit for it, until it shall be fully settled.” The principal, sought by this-clear stipulation, to restrict the agent from using its money in promotion of his other business, and from mingling his with his principal funds. To the contrary, he was required to keep the proceeds of sales on commission as the sole property of the principal and as a special deposit for it until fully settled for, so that whenever called upon by the company, the money so belonging to it could at once be realized. That both parties so understood the contract further appears in the language used in the settlement sheet of November 10, 1898, wherein, Hartrauft acknowledged the amount then ■due and agreed “to deliver the same to the company without discount, off-set or counter claim.”
But in violation of duty assumed under his contract, he used the money of his principal to the extent of $899.94 in his store to pay its running expenses, bills of goods purchased and put in his stock, and which remained so used and applied until his death, so that the use of plaintiff’s money which he was to hold as a special deposit, went into his other business, and to that -extent increased his other estate. If he bought goods and paid for them out of this fund, he increased his stock of goods that passed to his estate. If he paid other bills due against the store, he increased his funds to that extent, which, otherwise, he would have paid out of his business. So that by any use which a prudent man would make of the money, in discharging his ■obligations, it lifted that much of a burden from his business, and but for which more sales of his goods and their proceeds would be necessary to meet his obligations.
That this agent so used the "money of his principal in his *315 private businss, is shown by his own statement to Robinson, which is not contradicted. What is its effect upon the property into which tbs money passed? The defendant urges that plaintiff can look alone to the $40 cash on hand when Hartrauft died. We see no good reason for this position. Why a distinction should be made between cash on hands, even if it represented sales of goods, and the remaining goods, we are not informed, and we are not able to appreciate any such distinction. A trust could be wholly defeated by the trustee if such distinction could exist. The more completely he could commingle the trust funds with others, or lose the trust funds as to identification by investing them in goods, the more successfully has he evaded the obligations of his trust and cut off a remedy.
We cannot adopt this means of defense against the claim of the plaintiff. It has not been at fault in the transaction and is seeking only its own, and has traced its money into the stock of goods on the statement of its unfaithful agent, and we believe equity will charge the stock and its proceeds with the fund so used. The authorities uphold this view of the case, some of which we cite.
In the case of Jones et al. v. Kilbreth, 49 Ohio St., p. 401, supra, a draft had been drawn by Samuel Fosdick on Dows & Company, and Bent to Ohio Life Insurance & Trust Company for collection, and collection was made and amount placed to the credit of Fosdick. The Trust Company was insolvent and made an assignment, and Fosdick claimed that the proceeds of draft were trust funds and should be paid first and in full out of the assets of the Trust Company, and our supreme court so held. On page 110 of the opinion, Dickman, J., says: “If the TruBt Company, as an agent of the owner, received from him the draft for collection only, with an obligation to account for and pay over .the proceeds to him, a fiduciary relation with the owner was thereby established, and if his representatives trace the proceeds into the hands of the Trust Company, and seek to impress upon the property in its substituted form a trust character, thefcourt of common pleas would not be without jurisdiction to afford equitable relief by declaring and enforcing the trust. ”
Again, on pages 412-413 the . same judge sayB: “The *316 paper was impressed with a trust when received for collection, and its proceeds, bearing the same impress, are traceable and identifiable as having been used by the Trust Company, in place of its own assets to pay a specific creditor.” Then he quotes with approval the following from Thompson v. City Savings Institution. In 8th Atlantic Rep., 97:
“Where the rightful owner is in persuit of trust funds, he need not point out the very goods or bills or coin. He does all the law requires if he shows that the goods or bills or coin came to the hands of defendant impressed with a trust to his knowledge. In every such case the holder must respond either in the article taken or its value.”
See also Harrison v. Smith, 53 Am. Report, 571. Also National Bank v. Insurance Co., 104 U. S. P., 54, where the court held “that as long as trust property can be traced and followed, the property into which it has been converted, remains subject to the trust, and if a man mixes trust funds with his own money, the whole will be treated as trust property except so far as he may be able to distinguish what is his. ”
Like doctrine is laid down in 1 Story Eq., section 468, where it is said: “An agent is bound to keep the property of the principal separate from his own. If he mixes it up with his own the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part * * ”
There are very many other authorities equally as pointed and clear, and from the facts of this case and the light of authorities, we are of opinion that the stock of goods in which Hartrauft mingled and used the money in dispute, became charged with the sum as a trust fund, and that the trust followed the stock into the. hands of the defendant as administrator of Hartrauft’s estate. Our decree is that the defendant allow and pay to plaintiff the full sum of $899.94 so traced, as a preferred claim from the proceeds of sale of the stock, and that he allow and pay the interest on said sum from November 10, 1898, as a general claim against *317 the estate, and that defendant pay all costs, and the cause is remanded for execution.
JET. F. Bufket, for Plaintiff.
Blackford & Sons, for Defendant.